## SOPER VS. BARKER.

COSTS: APPEAL: BILL OF EXCEPTIONS.  (1) *Statutory rule as to costs in actions involving title to real property.*  (2) *Whether judge's certificate as to character of the action is final.  Bill of exceptions must show all the evidence.*

1. Under the statute (Tay. Stats., 1531, § 54, subd. 1), costs are allowed of course to the plaintiff upon his taking judgment in an action for the recovery of real property, or where a claim of title to real property arises on the proceedings, " or is certified by the court to have come in question at the trial."

2. Whether, where the trial court has made such a certificate, this court, on appeal, can review the evidence for the purpose of determining whether the facts warranted the certificate, *quære*. But if so, this can only be done where the bill of exceptions purports to contain all the evidence.

APPEAL from the Circuit Court for *Rock* County.

Trespass to the close. The acts complained of are, that defendant, in person and by his men and teams, on June 1, 1870, and at divers other times between that date and October 1, 1870, broke and entered on the premises described (which are alleged to be plaintiff's close and farm), and cut down, took and carried away the hay, grass, etc., growing and being there, and trod down and destroyed the same. The premises in question may be briefly described as so much of the east half of of the southwest quarter of section 2 in a certain town, as lies south of the Milwaukee and Beloit road, and the east half of the adjoining northwest quarter of section 11 in the same town, excepting a certain strip bounded on the north by the center of the above-mentioned road; on the south by a line parallel to this and about 188 rods distant from it; on the west by the division line between the east and west halves of said quarter sections; and on the east by a line parallel thereto and distant therefrom 27.4 rods.

The answer, after a general denial alleges, 1. A license from plaintiff to defendant to do the acts complained of. 2. That plaintiff's lands mentioned in the complaint adjoined the lands of one Mayhew; that by consent of Mayhew and the plaintiff a boundary line between their lands was established many years before the acts complained of; that plaintiff and Mayhew respectively had cultivated, occupied and possessed the lands on each side of said line, by mutual consent, and were so occupying them at the times mentioned in the complaint; that defendant went upon and occupied the land of Mayhew, and cut the grass thereon, and did all the acts complained of, by permission of Mayhew, and with the consent of the plaintiff. "And the defendant denies that said plaintiff, at the times mentioned in said complaint, had the possession of the lands on which said acts were committed, or had any right or title thereto."

On the trial, defendant objected to the introduction of any

evidence in support of the complaint, on the ground that it did not allege that plaintiff was in possession of the premises in controversy; but the objection was overruled. Plaintiff thereupon made proof, against objection, of his title to the premises. His evidence also tended to show that the strip of land 188 rods long and 27.4 rods wide (above described), lying immediately west of plaintiff's farm, belonged in 1870 to one Mayhew, and was not separated from plaintiff's land by a fence; that plaintiff and Mayhew, in 1869, ran with a tape line the line between their lands (being the east and south boundaries of the above mentioned strip), and stuck some stakes on the lines as thus run, the object being to ascertain where a fence should be built, and that each might occupy and enjoy what belonged to him; that Mayhew, in June, 1870, rented his said strip of land to defendant, who was to pasture a small inclosed part thereof and mow the residue, but the lines between said strip and plaintiff's land were not then pointed out to defendant; that Edward Ruger, a surveyor, in October, 1871, surveyed the lines between Mayhew's and plaintiff's said lands; that the lines established by him were respectively somewhat to the west and north of those staked out by Mayhew and the plaintiff; that defendant had cut and removed the grass over two irregular strips of plaintiff's land, one along the east and the other along the south boundary of Mayhew's land, containing together a little over two and a half acres; that after defendant had cut the larger portion of the grass, plaintiff gave him notice where the line was, as staked by plaintiff and Mayhew, and forbade defendant cutting over it; and that said line of 1869 ran east of the line established by Ruger, one foot at the northeast corner and three feet at the southeast corner of Mayhew's land.

Defendant's evidence tended to show that in 1864 the persons who owned respectively the two pieces of land above described (belonging at the commencement of this action to Mayhew and the plaintiff), ran a boundary line between them, and,

set some stakes ; that in 1865 and subsequently, there being no indication of the north and south line between said lands except a small piece of fence at the northern end thereof, and a wagon road, not entirely straight, running southward from such fence, the owners and occupants used said road in common, and each used for grass or plowed land up to said road ; that in 1871 plaintiff's grain was sowed only to the east line of said road, and defendant cut the grass up to the same line, including such grass as grew in the road ; that after he had cut (but not carried away) the grass to a width of several rods on that side of his field, plaintiff came and attempted to point out to him the division line, but did not claim any portion of the grass cut ; and that it was nearly a year later before defendant knew that plaintiff claimed any portion of the hay made by defendant on said land. This is a very imperfect statement of the evidence, which was voluminous, but it shows the character of the defense made at the trial, so far as it appears from the bill of exceptions. There is, however, no certificate that the bill of exceptions contains all the evidence.

The court instructed the jury that the cause of action set out' in the complaint was for a trespass ; that the testimony tended to show that previous to the summer of 1870, plaintiff and Mr. Mayhew owned and occupied adjoining lands in sections 2 and 11, above mentioned ; that the uncontradicted testimony for plaintiff tended to show that in the fall of 1869, plaintiff and Mayhew measured and staked the lines between them ; that though the lands had previously been occupied in severalty, there was no evidence that the true line had ever [prior to 1871] been established by an accurate survey ; *that this action of plaintiff and Mayhew would amount to a license to each from the other to occupy up to that staked line until some further act or notice, or until the line was established by a survey.* Defendant excepted to that part of the above instructions which is printed in italics. The court further charged that the testimony of the surveyor, Mr. Ruger, and other testimony on

plaintiff's part, tended to show that the north and south division line, as run by the survey, was from one to three feet west of the line staked by plaintiff and Mayhew, and that the east and west line bounding Mayhew's land on the south, ran not far from the line measured by plaintiff and Mayhew; but that this survey was not made until after the grass was cut by defendant, *and that plaintiff could only recover, if at all, for grass cut upon and carried away from plaintiff's land east of the north and south line, and south of the east and west line, staked by plaintiff and Mayhew in the fall of* 1869 *; that the testimony for plaintiff tended to show that the amount cut east and south of the line run by Mr. Ruger was two and* 52-100 *acres, "and from this quantity should be deducted the difference in the two lines, which difference on the north and south line, the testimony tends to show, is from one to three feet, leaving something less than two and a half acres alleged to have been cut by defendant east and south of the line measured by Mayhew."* Defendant excepted to that part of this charge here printed in italics, "except so far as it is in effect an instruction that plaintiff is [not?] entitled to recover for grass cut east of the staked line." The court further charged, 1. That if the jury found that plaintiff and Mayhew staked and measured the line as claimed, in 1869, and that the line run by Mr. Ruger was the correct division line, and was further west than the one staked in 1869, and that defendant, in the summer of 1870, cut over the east and south lines on to plaintiff's land, then he was liable for the value of so much of the grass growing on plaintiff's land east and south of the line of 1869, as he cut and carried away. 2. That there was nothing in the testimony to *estop* plaintiff from maintaining this action. Both these propositions were excepted to by the defendant.

Instructions were asked by defendant and refused, which were substantially as follows: 1. That if the former grantors of the respective pieces of land now owned by plaintiff and Mayhew had established, by mutual agreement, their division line o, the east line of the grass cut by defendant, and all the

owners of the land since such line was established, including plaintiff and Mayhew, had recognized that as the line between said pieces of land, and had occupied respectively ·up to that line, and if plaintiff stood by and permitted defendant to cut the grass without giving him notice that he (plaintiff) claimed any of such grass, then he could not recover ·for any of the grass cut by defendant. 2. That if defendant had no notice of the measurement and staking out of the line by Mayhew and plaintiff in the fall of 1869, and neither of them did anything to inform, or which tended to inform, defendant that the line had been altered from where it had been formerly established and recognized by the respective owners of said adjoining pieces of land, and plaintiff had only occupied up to the former line, which he had knowledge of, then the action of Mayhew and plaintiff in measuring and staking the line in 1869 would not affect defendant's right to the grass up to the former line. 3. That plaintiff could not recover in this action for the grass in question, unless he was in actual possession of the land on which it grew.

. The plaintiff had a verdict for $8.33. On motion of plaintiff's counsel, the judge before whom the action was tried, certified that the title to real property came in question on the trial, and that plaintiff was entitled to costs. Judgment was accordingly rendered in plaintiff's favor for both damages and costs; from which judgment defendant appealed.

*I. C. Sloan*, for appellant, contended that the title to land did not come in question in this cause, and the cause was therefore within the jurisdiction of a justice, and plaintiff not entitled to costs, but defendant was entitled to tax his costs against plaintiff, under Tay. Stats., 1352, § 5, 1531, § 54, and 1532, § 56. 2 Cow. Tr., 271 ; *Laubenheimer v. Mann*, 19 Wis., 519 : *Kreuger v. Zirbel*, 2 id., 233. Although title *may* come in question in trespass *quare clausum*, that issue does not necessarily arise. 1 Chitty's Pl., 175, and cases cited in notes (x) and (2). The gist of the action is injury to the possession ; and the action

cannot be maintained unless plaintiff was in possession when the injury was committed.  5 East, 485, 487; 1 Chitty's Pl., 167, 173, 175, and cases cited in note (1); Cow. Tr., 614 and note (b).  The complaint did not allege title in the plaintiff; and if it had done so, a general denial would not have put the title in issue, because possession is the only material question in the action.  *Rathbone v. McConnell*, 21 N. Y., 466; *Ehle v. Quackenbush*, 6 Hill, 537; *Craven v. Price*, 53 Barb., 442; *Squires v. Seward*, 16 How. Pr., 478; *Brown v. Majors*, 7 Wend., 495.  The plea of license admitted the title; it could not therefore be a question.  *Wickham v. Seely*, 18 Wend., 649; *Rathbone v. McConnell, supra; Launitz v. Barnum*, 4 Sandf., 637; *O'Reilly v. Davies*, id., 722; *Chandler v. Duane*, 10 Wend., 563; *Muller v. Bayard*, 15 Abb. Pr., 449.  The denial near the close of the answer is not of plaintiff's title to the land described in the complaint, but only that the acts were committed on that land.  Nor was plaintiff's title disputed on the trial.  Deeds may be received in evidence in justice's court on any collateral question, without involving the question of title. *Otis v. Hall*, 3 Johns., 450; *Nichols v. Bain*, 42 Barb., 353.  A trial of the issue of possession does not involve title.  *Ehle v. Quackenbush, supra; Heintz v. Dellinger*, 28 How. Pr., 39.  2. The decision of the circuit judge in granting the certificate, is subject to review.  *Barney v. Kerth*, 6 Wend., 555.  3. The court erred in refusing to submit the question of license to the jury.

*Bennett & Sale*, for respondent, argued that the plaintiff could maintain the action because he was in possession when the action was brought, even if defendant was unlawfully in possession at the time of committing the trespass.  2 Greenl. Ev., § 619; 3 Cooley's Black., 210, and notes (3) and (4); *Liford's Case*, 11 Coke, 51; *Bigelow v. Jones*, 10 Pick., 161; *Blood v. Wood*, 1 Met., 528; *Tyler v. Smith*, 8 id., 599; *Kennebec Prop. v. Call*, 2 Mass., 486; *Taylor v. Townsend*, 8 id., 411, 415; *Dewey v. Osborn*, 4 Cow., 329; *Frost v. Duncan*, 19 Barb., 560;

*King v. Baker*, 25 Pa. St., 186. 2. Title to lands came in question under the pleadings and upon the trial. 1 Cow. Tr., 41–43 ; *Murray v. Van Derlyn*, 24 Wis., 67 ; *Ashbough v. Walter*, id., 466 ; *Stoppenbach v. Zohrlaut*, 21 id., 385 ; *State v. Doane*, 14 id., 483 ; *Manny v. Smith*, 10 id., 509 ; *Rogan v. Perry*, 6 id., 194 ; *Brown v. Streng*, 32 id., 59 ; *Barteau v. Appleton*, 23 id., 414 ; *Heaton v. Ferris*, 1 Johns., 146 ; *Jackson v. Randall*, 11 id., 405 ; *Koon v. Mazuzan*, 6 Hill, 44 ; *Boyer v. Schofield*, 2 Keyes, 628 ; *Little v. Denn*, 34 N. Y., 452 ; *Mumford v. Withey*, 1 Wend., 279 ; *Saunders v. Wilson*, 15 id., 338 ; *Whiting v. Dudley*, 19 id., 373 ; *Alleman v. Dey*, 49 Barb., 641 ; *Shull v. Green*, id., 311. The plea of "not guilty," in trespass to real property, puts in issue not only the fact of the trespass, but also the *title* to the premises ; and the general denial under the code is equivalent to that plea under the former system. 1 Chitty's Pl., 491 ; 7 Term, 350 ; 7 Cow., 35 ; 8 id., 115 ; 1 id., 228 ; *Dunkel v. Farley*, 1 How. Pr., 180 ; *Wickham v. Seeley*, 18 Wend., 649.

COLE, J. The counsel for the defendant insist that, to support this action of trespass *quare clausum*, it was only essential to prove the actual possession of the plaintiff and an illegal entry by the defendant, and that title to land does not necessarily come in question. Consequently it is claimed that the case was within the jurisdiction of a justice, and that the plaintiff was not entitled to costs.

Where the action is founded merely on possession, the question of title not being raised in any way, doubtless all that it is necessary to prove in order to support the action, is an injury to the actual possession. But questions of title and ownership are frequently raised and tried in the action. It is very evident that under the pleadings in this case the question of title might have been involved. For, in addition to the other matters set up in the answer, the defendant denies that the plaintiff had possession of the land on which the acts complained of

were committed, *or had any right or title thereto.* Certainly under that averment title might have come in question; and the circuit judge made and signed a certificate that title to real property came in question on the trial. This entitled the plaintiff to costs upon a recovery, under Tay. Stats., 1531, § 54, subd. 1, which provides that costs shall be allowed of course to the plaintiff upon a recovery in an action for the recovery of real property, or where a claim of title to real property arises on the proceedings, or is certified by the court to have come in question at the trial. Whether, when the court makes the certificate, we can review the evidence for the purpose of determining whether the facts warranted such a certificate, may be a question; but surely we could only do so when the bill of exceptions purports to contain all the testimony. There is no statement in the present bill that it contains all the evidence; and we therefore must presume that title to land did in fact come in question, as certified by the court below. Indeed it appears from the bill of exceptions as it now stands, that the plaintiff introduced the conveyances constituting his chain of title in evidence, doubtless supposing he was bound to do so under the issues made by the answer. This, it seems to us, is all that need be said to dispose of the question whether the plaintiff was entitled to costs.

The answer further stated that the premises mentioned in the complaint were adjacent to land owned by one Mayhew; that a boundary and division line between the lands of plaintiff and Mayhew was mutually established many years prior to the commission of the trespasses complained of; that each owner had occupied and cultivated up to this boundary line by mutual consent: and that the defendant went and cut the grass and occupied the land under Mayhew up to that line, without objection. Hence it is said that there was an implied mutual license to cut and carry away the grass and crops in controversy; and that no action of trespass could be maintained until the plaintiff had revoked this license. And it is insisted that the court

erred in not submitting this question of license to the jury. But as we understand the case, that question was submitted with proper instructions. The jury were expressly told that the plaintiff, if he recovered at all, could only recover for grass cut and carried away from his land which grew east and south of this division or boundary line marked by the plaintiff and Mayhew. This was directing the jury that there was an implied license to each owner to occupy to that line until some further act or notice. But it could hardly be claimed that the action of the parties in respect to the division line amounted to a license to either to cross over the line and cut grass on the other side of it, which the jury must have found that the defendant did do, under the charge of the court.

As we see no material error in the record, the judgment of the circuit court must be afirmed.

*By the Court.*—Judgment affirmed.