# GREENWOOD *vs.* COLEMAN.

[BILL IN EQUITY TO ENFORCE VOLUNTARY CONVEYANCE.]

1. *Validity of fraudulent deed as between parties.*—A voluntary conveyance, made with intent to hinder and defraud the grantor's creditors, is nevertheless valid and binding as between the parties; and the grantor cannot set up the fraud in avoidance of it.

2. *Construction of deed of gift.*—A deed of gift, by which certain slaves are conveyed to a trustee, in trust for the grantor's wife during the term of her natural life, "and at her death to descend to her children, if any should survive her; and in case there be no child or children, then said property, or such portion as may be undisposed of, to descend to, and be a part of the estate of the said" grantor,—creates a life estate in the wife, with remainder to her children living at her death.

3. *Continuance of trustee's title.*—Where slaves are conveyed by deed to a trustee, in trust for the grantor's wife for life, with remainder to her children living at her death, and, in default of children, then to descend and revert to the grantor, the title of the trustee ceases on the death of the wife, and the children then living take a legal estate.

4. *Statute of limitation as applicable to infant remainder-man.*—The statute of limitations is no defense to a bill filed by a remainder-man, against the grantor in a voluntary conveyance, seeking a recovery of the slaves conveyed, together with an account of their hire and profits, when it appears that the grantor set up no adverse possession during the life of the first taker, that the remainder-man was an infant when his right accrued, and that the bill was filed within three years (Code, § 2486) after he had attained his majority.

5. *Conveyance of wife's separate estate under act of 1850.*—If a married woman, while yet an infant, joins with her husband in a conveyance of her separate statutory estate under the act of 1850, (Session Acts 1849–50, p. 63,) the deed is voidable as to her; and a bill in equity, filed within a reasonable time after attaining her majority, is an appropriate mode of avoiding it.

6. *Allowance to father out of child's estate for education and maintenance.*—Under a bill filed by a child against her father, to enforce the execution of a voluntary conveyance of slaves, with an account of their hire and profits,—*held*, on the authority of *Alston v. Alston*, (ante, p. 15,) that a reference to the master should have been ordered, to ascertain whether the defendant was able to maintain and educate the complainant in a manner suitable to her independent fortune; and that, if he was unable so to maintain and educate her, an allowance should be made to him for that purpose out of her income.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 2d January, 1856, by Mrs. Lucy J. Coleman, a married woman, suing by her next friend, against Samuel Greenwood, her father, and others. Its object was, to enforce a partition of certain slaves between the complainant and her only sister, Leonora Greenwood, and to compel the said Sam'l Greenwood to account for the hire and profits of said slaves, which were in his possession. The complainant's title to the slaves was founded on a deed of gift, dated the 13th June, 1840, by which the said Samuel Greenwood, in consideration of natural love and affection for his wife, Mrs. Elizabeth R. R. Greenwood, conveyed them to his son, Wm. Greenwood, as trustee, "in trust for the said Elizabeth R. R. Greenwood during the term of her natural life, and at her death to descend to her children, if any should survive her; and in case there be no child or chil-

dren, then the said property, or such portion as may be undisposed of, to descend to, and be a part of the estate of the said Samuel Greenwood." The bill alleged, that this deed was acknowledged by the grantor before a justice of the peace, was duly recorded, and was accepted by the trustee; that Mrs. Greenwood, the complainant's mother, died in 1843, leaving the complainant and said Leonora her only surviving children; that the complainant married her present husband, George W. Coleman, in 1849, being then in her seventeenth year; that the trustee named in the deed removed from the State, and died in 1854; that the slaves conveyed by the deed remained in the possession of the grantor, and some of them were sold and disposed of by him; that in March, 1851, both the complainant and her said husband being then under the age of twenty-one years, they released to the said grantor all her interest in said slaves and their increase, in consideration that he would deliver up to them six of said slaves; that this release was given for the purpose of avoiding an unpleasant family difficulty, and is void on account of the complainant's infancy. The prayer of the bill was, that the slaves might be divided between the complainant and her said sister; that, if necessary for that purpose, a sale might be had under the direction of the court; that the release might be set aside; that said Samuel Greenwood might be compelled to account for the hire and profits of the slaves in his possession, as also for the value of those which he had sold; and for general relief.

An answer was filed by Samuel Greenwood, in which he set up the following defenses: 1st, that the deed of gift was executed for the purpose of securing his property to his wife and children against whatever judgment might be recovered against him in a slander suit then pending, and with the express understanding between the parties that it was to be void and of no effect if no judgment was rendered against him; 2d, that the deed, if valid for any purpose, conferred no interest on the complainant; 3d, that the complainant's interest in the slaves, if any she ever had, was effectually released by the instrument executed by her and her husband in 1851, her husband

being then of full age; 4th, that the statute of limitations had effected a bar to the suit; and, 5th, that on account of his inability, in the event the complainant's claim was sustained, to educate and maintain her in a manner suitable to her fortune, an allowance should be made to him, out of the amount for which he might be held accountable, for her past maintenance and education.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, which is now assigned as error.

Wm. M. Byrd, and Geo. W. Gayle, for appellant.

Wm. P. & Thos. G. Chilton, with J. T. Morgan, *contra.*

A. J. WALKER, C. J.—The deed of Sam'l Greenwood, under which the complainant claims, was valid against him, notwithstanding it may have been made with a fraudulent intent.—Wiley, Banks & Co. v. Knight, 27 Ala. 336; Walton v. Bonham, 24 Ala. 513; Rochelle v. Harrison, 8 Porter, 351.

[2.] The decisions of this court settle the construction of the deed, and give it the effect of creating a life estate in Mrs. Greenwood, with a remainder to her children living at her death.—Elmore v. Mustin, 28 Ala. 369; McVay v. Ijams, 27 Ala. 238; Couch v. Anderson, 26 Ala. Rep. 676; McWilliams v. Ramsey, 23 Ala. 813; Williams v. Mason, 23 Ala. 488.

[3-4.] By virtue of the deed, the complainant is entitled to an undivided half of the negroes covered by it, with their subsequent increase, unless her right is barred by the statute of limitations. The statute of limitations effected no bar in the life-time of Mrs. Greenwood. Six years from the execution of the deed had not elapsed when she died; and besides, the answer sets up no adverse possession until 1843, in which year she died. Upon the death of Mrs. Greenwood, in 1843, the trust terminated, and the legal title vested in her two children, the complainant and Leonora Greenwood. The deed in this case is materially different from that which was construed in Bryan and Wife v. Weems, 29 Ala. 423.

11

That deed expressly continued the trust after the death of the first taker. The trustee was clothed with a trust for the remainder-men, as well as the beneficiary of the antecedent estate. Here, the trust, by the terms of the deed, does not extend beyond the death of Mrs. Greenwood. The property is conveyed to the trustee, to have and hold in trust for the use "of the said Elizabeth R. R. Greenwood during the term of her natural life, and at her death to descend to her children, if any should survive her; and in case there be no child or children, then the above property, or such portion of it as may be undisposed of, to descend to, and be a part of the estate of the said Samuel Greenwood." It is most clear, that the words of the deed do not vest the remainder in the trustee; and there was no purpose to be accomplished by a longer continuance of the trust. For these reasons, and upon the authorities which we cite below, we decide, that the two children of Mrs. Greenwood took a legal title to the slaves, free from any trust.—Smith v. Ruddle, 15 Ala. 28; Comby v. McMichael, 19 Ala. 747. It follows, that an adverse possession after the death of Mrs. Greenwood is not available to the defendant, upon the ground that the legal title in remainder was vested in an adult trustee. The complainant having been an infant when her right accrued, the statute of limitations could not bar it, because this suit was commenced within three years after her majority.—Code, § 2486.

[5.] The act of 1850 authorizes the conveyance of a married woman's statutory separate estate, by joint deed of husband and wife. The wife's consent is requisite to the conveyance. She must be a party to the contract, and one of the makers of it. Upon universally accepted principles of law, she cannot give her consent to the contract during her infancy. If she were a feme sole, she could not make a deed which she could not avoid. It is inconceivable that it was designed to confer upon her, when under coverture, an authority to contract which did not pertain to her if sole and unmarried, and to dispense with the disability of infancy.—Pool v. Mix, 17 Wend. 119; Sanford v. McLean, 3 Paige, 117. We

decide, therefore, that the release of Mrs. Coleman and her husband, made during the infancy of the former, was voidable.    The bill in this case was an appropriate mode of avoiding it; and the application is made in a reasonable time, all the circumstances of the case being considered.

[6.] In the case of Alston v. Alston, at the present term, we had occasion to consider the question of the allowance to a parent, out of his child's independent estate, for the maintenance and education of the child. Upon the principles settled in that case, we think the chancellor should have referred it to the register, to ascertain whether the father was able to maintain and educate his daughter, in a manner corresponding with her independent fortune; and, if he was not, should allow him to retain out of the income of such independent estate such sums as may have been expended in the bestowment of a maintenance and education corresponding with such fortune.

For the error of the decree in reference to this last particular, it is reversed, and the cause remanded.